IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-52-BO

| | |
|---|---|
| DANIEL PATRICK,<br>               Plaintiff,<br><br>v.<br><br>MATTHEW G. WHITAKER, in his official capacity; WILLIAM P. BARR, in his official capacity; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, an agency of the Department of Justice; THOMAS E. BRANDON, in his official capacity; and UNITED STATES OF AMERICA,<br>               Defendants. | ORDER |

This cause comes before the Court on plaintiff's motion for summary judgment and defendants' motion to dismiss. The appropriate responses and replies have been filed, and a hearing on the matters was held before the undersigned on November 8, 2019, at Elizabeth City, North Carolina. For the reasons that follow, defendants' motion to dismiss is granted and this action is dismissed in its entirety.

## BACKGROUND

Matthew Whitaker, who served as chief of staff to the United States Attorney General, was designated by the President to serve as Acting Attorney General following the resignation of Attorney General Jefferson B. Sessions III on November 7, 2018. The President designated Mr. Whitaker as Acting Attorney General pursuant to the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. §§ 3345, *et seq.*

On December 18, 2018, then-Acting Attorney General Whitaker signed a final rule which was published on December 26, 2018, that clarifies that "bump stock" devices – firearms attachments which permit semi-automatic rifles to function as machine guns – are machine guns for purposes of 18 U.S.C. § 922(o). 83 Fed. Reg. 66,514 (Dec. 26, 2018) (hereinafter bump stock rule). The final rule further required all possessors of bump stock devices to destroy or abandon the devices to an ATF office prior to the rule's effective date of March 26, 2019. *Id.*

Attorney General William P. Barr was appointed with the consent of the Senate on February 14, 2019. 165 Cong. Rec. S1397. Plaintiff filed this action on February 21, 2019, seeking declaratory and injunctive relief against Acting Attorney General Whitaker and the bump stock rule. [DE 1]. Plaintiff, a bump stock owner, sought an injunction against the final rule to prevent it from taking effect. Plaintiff further sought a declaration that: the final rule is invalid as signed by Mr. Whitaker and that Mr. Whitaker's designation as Acting Attorney General violated the Appointments Clause and federal law such that Mr. Whitaker was not lawfully the Acting Attorney General; that the FVRA does not apply when there is an office-specific designation statute, such as the Attorney General Act, 28 U.S.C. § 508, and the designated official is available to serve; and that 5 U.S.C. § 3345(a)(3) is unconstitutional insofar as it would permit the President to direct an employee to act as an officer and insofar as it would permit the President to bypass an available first assistant by designating a non-confirmed official who is not the first assistant to act as a principal officer.

With his complaint, plaintiff filed a motion for preliminary injunction and requested expedited briefing and a hearing, so that a decision by this Court would be possible prior to the bump stock rule taking effect. The Court allowed the request for expedited briefing and set the matter for hearing. Plaintiff then requested to continue the hearing, asking this Court to await a

2

decision by the D.C. Circuit on the same issues presented here. On March 11, 2019, Attorney General Barr ratified and affirmed the bump stock ban. 84 Fed. Reg. 9239 (March 14, 2019). After withdrawing the motion for preliminary injunction, plaintiff filed an amended complaint and two days later a second amended complaint.

In his second amended complaint, plaintiff asks this Court to enjoin the President's policy of using the FVRA to designate a non-Senate confirmed official or employee to act as a principal officer during an absence or vacancy when the appropriate first assistant is available to serve, displacing the acting principal officer designated by an office-specific designation statute. Plaintiff further seeks a declaration that the bump stock rule unconstitutionally and unlawfully caused plaintiff harm from its inception as it deprived him of his property right to alienate his bump stock from the day the ban was signed because then-Acting Attorney General Whitaker was not authorized to issue the bump stock ban; that the bump stock ban was illegal, notwithstanding its ratification by Attorney General Barr, and that the ratification does not cure any harm to plaintiff; that the government's FVRA policy violates the Constitution's Appointments Clause and applicable statutes; that Matthew G. Whitaker's designation as Acting Attorney General violated the Appointments Clause and the Attorney General Act; that the FVRA does not apply when there is an office-specific designation statute and the designated official is available to serve; and finally that 5 U.S.C. § 3345(a)(3) is unconstitutional insofar as it permits the President to designate an employee to act as an officer and permits the President to bypass an available first assistant.

## DISCUSSION

The Constitution's Appointments Clause requires the President to nominate and appoint, with the advice and consent of the Senate, officers of the United States. U.S. Const. art. II, § 2, cl. 2.

3

> [T]he Appointments Clause of Article II is . . . among the significant structural safeguards of the constitutional scheme. By vesting the President with the exclusive power to select the principal (noninferior) officers of the United States, the Appointments Clause prevents congressional encroachment upon the Executive and Judicial Branches. . . . The President's power to select principal officers of the United States was not left unguarded, however, as Article II further requires the "Advice and Consent of the Senate." This serves both to curb Executive abuses of the appointment power, and "to promote a judicious choice of [persons] for filling the offices of the union[.]" By requiring the joint participation of the President and the Senate, the Appointments Clause was designed to ensure public accountability for both the making of a bad appointment and the rejection of a good one.

*Edmond v. United States*, 520 U.S. 651, 659–60 (1997) (internal citations omitted). Congress may vest the power to appoint inferior officers in either the President, the court, or in department heads. U.S. Const. art. II, § 2, cl. 2.

In enacting the Attorney General Act, Congress determined what should happen when there is a vacancy in the office of Attorney General, and expressly provided that the Deputy Attorney General, otherwise referred to as the first assistant to the Attorney General, may exercise all duties of the office. 28 U.S.C. § 508(a). The statute further provides who shall exercise the duties of the office in the absence of both the Attorney General and the Deputy Attorney General. *Id.* at (b). In enacting the FVRA, Congress determined that the President "may direct an officer or employee of [an] Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to [limitations]." 5 U.S.C. § 3345(a)(3). The FVRA is the exclusive means for temporarily authorizing an acting official to perform the duties and functions of any office of an Executive agency unless, as is relevant here, a statutory provision designates an officer or employee to perform the functions and duties of a specified office in an acting capacity for a temporary period. 5 U.S.C. § 3347(a)(1)(B).

Plaintiff asks this Court to make several declarations, each of which, at bottom, concern whether the President validly designated a Department of Justice employee, Matthew Whitaker,

4

to serve as Acting Attorney General when the first assistant Attorney General was available to serve. The Court is inclined to agree with plaintiff that the President's designation of Mr. Whitaker as a principal officer pursuant to the FVRA "raises grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J. concurring). However, because the Court concludes that plaintiff lacks standing, it dismisses his claims.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

Plaintiff describes his action as an appointments challenge resting on two bases: a challenge to Mr. Whitaker's acting service based upon the bump stock rule and a challenge to the President's ongoing policy of designating individuals like Mr. Whitaker as acting officers in violation of the FVRA and the Appointments clause. [DE 40 at 10]. To have standing to sue, a plaintiff must demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

5

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan*, 504 U.S. at 560. To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). The plaintiff bears the burden of establishing standing, and at this stage of the proceeding must have alleged facts which clearly demonstrate standing. *Id.* at 1547. The elements of standing are "not mere pleading requirements but an indispensable part of the plaintiff's case." *Lujan* 504 U.S. at 561. Finally, a plaintiff must have standing to prosecute each claim and for each form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

A.  Challenge to Mr. Whitaker's acting service based upon the bump stock rule.

First, plaintiff lacks standing to challenge then-Acting Attorney General Whitaker's designation and service based upon the bump stock rule. At the beginning of this litigation, plaintiff had standing to challenge Whitaker's designation as Acting Attorney General based upon the bump stock rule, as he alleged a prospective challenge to the rule. However, when plaintiff filed his second amended complaint, he no longer alleged a prospective challenge to the bump stock rule, and rightly so because Attorney General Barr's ratification of the bump stock rule likely had the legal effect of "resolv[ing] the claim on the merits by 'remedying the defect' (if any) from the initial appointment." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019) (internal alterations omitted). Rather, plaintiff alleged a retrospective claim, asking this Court to declare that, for a period of time in the past, the designation of Matthew

6

Whitaker as Acting Attorney General resulted in injury to plaintiff. However, "[i]n a case of this sort, where the plaintiff[] seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).

Plaintiff's arguments regarding voluntary cessation miss the mark. A defendant's voluntary cessation of an action or practice that is the subject of suit does not necessarily strip a court of its power to adjudicate the plaintiff's claim. *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). Rather, the court must determine whether the defendant could resume the conduct being challenged. *Id.* The voluntary cessation doctrine thus concerns whether or not a plaintiff's claims have been rendered moot by the actions of the defendant, but it does not alleviate a plaintiff of his burden to establish standing at the outset. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (voluntary cessation cannot be used "as a substitute for the allegation of present or threatened injury upon which initial standing must be based.").

Moreover, there is no redress this Court can provide for plaintiff's alleged past injury. Although a declaration of past harm may, under certain circumstances, be sufficient to confer standing, *see, e.g., O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), what plaintiff asks for here would amount to an advisory opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*" *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). If the Court were to enter a declaration that the bump stock rule was invalid prior to its ratification based upon Mr. Whitaker's appointment, it would not result in any action by defendants because the rule has been ratified by Attorney General Barr, who plaintiff does not dispute was properly appointed.

7

B.     Challenge to the President's ongoing policy.

Plaintiff's alleged injury from an ongoing policy of the President is also insufficient to confer standing. As discussed above, standing requires the demonstration of a concrete, particularized injury that is real and immediate, not hypothetical or conjectural. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Where a threatened injury is alleged as the basis of standing, it must be "certainly impending" and "possible future injury is not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiff points to high turnover in high-level executive branch positions in the current administration, arguing that it is "highly likely that another invalidly acting official will soon be in a position to issue regulations that affect plaintiff," and that it is also likely that "such acting official will promulgate gun control regulations." [DE 40 at 27]. The circumstances which must arise for plaintiff to be injured by the President's alleged policy stretch well-past "certainly impending." Not only must the President apply the FVRA to a vacant high-level executive branch position in a way that plaintiff argues is unconstitutional or invalid, but that person must take some action which would affect this plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Too many circumstances or events must come to pass for plaintiff to suffer injury or face certain injury. His challenge to the President's policy of using the FVRA is simply too speculative and hypothetical to support Article III standing. *See Clapper*, 568 U.S. at 414.

## CONCLUSION

Accordingly, the Court concludes that plaintiff lacks standing to prosecute his claims, and thus the Court lacks subject matter jurisdiction to consider them. Defendants' motion to dismiss [DE 39] is GRANTED. Plaintiff's second amended complaint is DISMISSED in its entirety. Plaintiff's motion for summary judgment [DE 41] is DENIED AS MOOT. As they relate to the

8

Case 5:19-cv-00052-BO   Document 60   Filed 12/12/19   Page 8 of 9

motion for summary judgment, both plaintiff's and defendants' motions to file sur-replies [DE 47 & 48] are also DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this _12_ day of December, 2019.

*/s/ Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE